UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────

NSI INTERNATIONAL, INC.,

               Plaintiff,           20-cv-8389 (JGK)

      - against -           <u>MEMORANDUM OPINION</u>
                                        <u>AND ORDER</u>

HORIZON GROUP USA, INC.,

               Defendant.
────────────────────────────────

**JOHN G. KOELTL, District Judge:**

The plaintiff, NSI International, Inc. ("NSI"), brought this action against Horizon Group USA, Inc. ("Horizon"), asserting claims of copyright infringement pursuant to 17 U.S.C. § 501, false designation of origin and false advertising pursuant to Section 43 of the Lanham Act, 15 U.S.C. § 1125, common law unfair competition, and common law unjust enrichment.

Horizon now moves to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) or, alternatively, to strike parts of the complaint. For the reasons stated below, the motion to dismiss is **granted.**

I

The following facts are drawn from the amended complaint ("AC") and are accepted as true for the purposes of this motion.

NSI—in conjunction with the Smithsonian Institution—markets and manufactures creative and educational activity kits for children in the fields of science, technology, engineering, and math (the "Kits"). AC ¶ 9. The Kits are marketed with an allegedly

uniform aesthetic and are sold through NSI's website and at major retailers. Id. NSI owns the United States copyright registrations for many of the Kits and their packaging, in particular for the Smithsonian Microscope packaging artwork. AC ¶ 10. NSI claims that through substantial investment, the relevant public has come to associate the Kits' distinctive packaging with NSI and its Smithsonian brand. AC ¶ 11.

In September 2016, NSI brought a prior action in this District against Horizon alleging copyright infringement, unfair competition, and unjust enrichment. AC ¶ 15. NSI alleged that Horizon's Discovery-branded products used product names, packaging artwork, and product instructions similar to NSI's Kits. Id. The suit was settled and voluntarily dismissed in January 2017. AC ¶ 16.

In the present action, NSI alleges that Horizon has continued to copy from or pattern its products on at least ten of NSI's Kits, in some instances releasing a similarly packaged product within a year of the market success of a similar NSI Kit. AC ¶¶ 17-18. NSI alleges that Horizon has copied NSI's general graphic setup, color ways, photography of components from the same view, depiction of kit components, placement of name and logo, and box size. AC ¶ 21. Horizon has recently introduced new packaging for some of its products which NSI claims is even more similar to its Smithsonian branded Kits than previous iterations. AC ¶ 20.

NSI specifically alleges that Horizon copied four elements of the Smithsonian Microscope kit's copyrighted packaging design for use on Horizon's Microscope Lab kit: (1) a circular logo followed by the brand name; (2) three circular graphics down the side of the box indicating magnification levels; (3) a picture of the microscope from a perspective view; and (4) pictures of seven identical accessories. Id. NSI also alleges that the eight components included in Horizon's Microscope Lab are the exact same as those contained in NSI's Smithsonian Microscope. AC ¶ 22.





NSI/Smithsonian Microscope Kit            Horizon/Discovery Microscrope Lab Kit

Horizon had access to the copied material through publicly available websites. AC ¶ 29. Horizon did not have a license for

the copyrighted material, and was not authorized to display, reproduce, or use any of the material associated with the Kits. AC ¶ 13. The allegedly infringing products are being sold in several national retailers. AC ¶ 22.

NSI claims that Horizon engaged in this activity intentionally, despite having notice of NSI's rights. AC ¶ 31. NSI further claims that the alleged copying enables retail stores to replace NSI's Smithsonian Kits with Horizon's less expensive Discovery Kits, which causes or is likely to cause consumer confusion, and influences purchasing decisions. AC ¶¶ 19, 38.

NSI seeks to permanently enjoin Horizon's copyright infringement and patterning, in addition to obtaining compensatory damages for injury believed to be in excess of $10 million and disgorgement of ill-gotten gains, or in the alternative, statutory damages pursuant to 17 U.S.C. § 504(c). AC at 23. NSI is further seeking costs, disbursements, and attorney's fees pursuant to 17 U.S.C. § 505, prejudgment interest on any monetary award, and punitive damages. Id.

## II

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. See McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir.

2007).[1] The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id. When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, citations, footnotes, and internal quotation marks in quoted text.

Horizon is seeking dismissal of the Amended Complaint, arguing that none of the allegations state a claim for which relief can be granted.

A

Horizon argues that the Amended Complaint fails to state a claim of copyright violation because the packaging for its Microscope Lab kit is not substantially similar to packaging for NSI's Smithsonian Microscope.[2]

The Copyright Act gives copyright holders several "exclusive rights," including the right "to reproduce the copyrighted work" or to authorize others to do so. 17 U.S.C. § 106. "Anyone who violates any of the exclusive rights of the copyright owner . . . is an infringer of the copyright . . . ." Id. § 501(a). A copyright owner who claims infringement must demonstrate "(1) ownership of a valid copyright and (2) infringement of the copyright by the defendant." Spinelli v. Nat'l Football League, 903 F.3d 185, 197 (2d Cir. 2018).

It is undisputed that NSI has a valid copyright for its packaging. To prove copyright infringement, a plaintiff must

---

[2] While NSI argues that copyright cases are rarely dismissed on a 12(b)(6) motion, a district court can resolve the question of substantial similarity as a matter of law if "the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar." Peter F. Gaito Architecture v. Simone Dev. Corp., 602 F.3d 57, 63 (2d Cir. 2010). "[W]here, as here, the works in question are attached to a plaintiff's complaint, it is entirely appropriate for the district court to consider the similarity between those works in connection with a motion to dismiss, because the court has before it all that is necessary in order to make such an evaluation." Id. at 64.

demonstrate both that the defendant has "actually copied" the work, and that such "copying is illegal because a substantial similarity exists between the [allegedly infringing] work and the protectible elements of [the copyrighted work]." Knitwaves, Inc. v. Lollytogs Ltd., 71 F.3d 996, 1002 (2d Cir. 1995); see also Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 110 (2d Cir. 2001); Odegard, Inc. v. Costikyan Classic Carpets, Inc., 963 F. Supp. 1328, 1336 (S.D.N.Y. 1997).[3]

Horizon argues that there is no substantial similarity between their packaging and the protectible elements of the NSI's packaging. The test for "substantial similarity" is "whether the ordinary observer, unless he set out to detect the disparities [between the two works], would be disposed to overlook them, and regard their aesthetic appeal as the same." Folio Impressions, Inc. v. Byer Cal., 937 F.2d 759, 765 (2d Cir. 1991); see also Knitwaves, 71 F.3d at 1002. Under the ordinary observer test, the Court "considers the themes, characters, plots, settings, and total concept and feel of the two works." Crane v. Poetic Prods. Ltd., 549 F. Supp. 2d 566, 569 (S.D.N.Y. 2008).

_____

[3] Absent proof of "[a]ctual copying", the "plaintiff may establish copying circumstantially by demonstrating [(i)] that the person who composed the defendant's work had access to the copyrighted material, and [(ii)] that there are similarities between the two works that are probative of copying." Jorgensen v. Epic/Sony Records, 351 F.3d 46, 51 (2d Cir. 2003). Probative similarity is a lower burden than substantial similarity, but only satisfies the copying element of copyright infringement; a plaintiff still must show that copying resulted in infringement by showing substantial similarity between the allegedly infringing work and the protectible elements of the copyrighted work. See Blakeman v. Walt Disney Co., 613 F. Supp. 2d 288, 305 (E.D.N.Y. 2009). Because the issue of copying is not disputed in this case, only the issue of substantial similarity is at issue here.

"[D]issimilarity between some aspects of the works will not automatically relieve the infringer of liability, for no copier may defend the act of plagiarism by pointing out how much of the copy he has not pirated." Williams v. Crichot, 84 F.3d 581, 588 (2d Cir. 1996). "It is only when the similarities between the protected elements of [the] plaintiff's work and the allegedly infringing work are of small import quantitatively or qualitatively that the defendant[s] will be found innocent of infringement." Id. at 588.

Nevertheless, differences between the two works are relevant to the question of substantial similarity because "numerous differences tend to undercut substantial similarity." Warner Bros., Inc. v. Am. Broad. Cos., 720 F.2d 231, 241 (2d Cir. 1983); see also Mallery v. NBC Universal, Inc., No. 07-cv-2250, 2007 WL 4258196, at *8 (S.D.N.Y. Dec. 3, 2007) (stating that listing "several highly generalized similarities . . . fails to address the underlying issue: whether a lay observer would consider the works as a whole substantially similar."), aff'd, 331 F. App'x 821 (2d Cir. 2009).

When a work contains both protectible and unprotectible elements, as the work does here, the inspection must be more discerning. See Knitwaves, 71 F.3d at 1002. The Court "must attempt to extract the unprotectible elements from [its] consideration and ask whether the protectible elements, standing alone, are substantially similar." Id. This more discerning test

does not change the degree of similarity required, only what elements of the works are being compared. See id. at 1002–03; see also Folio, 937 F.2d at 766 ("[S]ince only some of the design enjoys copyright protection, the observer's inspection must be more discerning."); Odegard, 963 F. Supp. at 1338. The court must identify similarities between the two works, and then determine if the similarities are due to protected or unprotected expressions. See Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc., 338 F.3d 127, 134-35 (2d Cir. 2003).

NSI claims that Horizon's microscope packaging copies the overall look and feel of its Smithsonian Microscope, as well as four specific elements. The first allegedly similar element is the circular logo in the corner of the package. While the two logos share a similar shape, they are graphically very different. Smithsonian's logo is a white sunburst shape, while Discovery's logo is a green and blue globe. No reasonable jury could find the logos to be substantially similar. See, e.g., Horizon Comics Prods., Inc. v. Marvel Ent., LLC, 246 F. Supp. 3d 937, 945-46 (S.D.N.Y. 2017) (finding that "no reasonable jury could find a substantial similarity" between elements that "vary significantly in color and design.").

The second alleged similarity is between three circular graphics on both packages which depict the magnification level of the microscopes. The graphics differ in their coloring, the order in which they are presented, the scientific matter which is

depicted, and the placement of the descriptive text. The graphics on NSI's package are light and dark blue with wavy lines and the circle has a gray outline. They are ordered top to bottom from least to most magnified. The text is wrapped around the top of the circle. On the other hand, the graphics on Horizon's package are green and black and depict groups of cells. They are presented in the opposite order as NSI's, and the descriptive text is overlaid on the bottom of the graphic. As with the logos, these "differences belie" a claim of substantial similarity. Id. at 947. All that is similar between the two graphics is the idea of depicting the microscope's magnification rather than the expression of that idea. It is plain that copyright protection only extends to the expression of ideas, not to the ideas themselves. See Walker v. Time Life Films, Inc., 784 F.2d 44, 48 (2d Cir. 1986) ("[C]opyright protection . . . extends only to [a] particular expression of ideas, not to the ideas themselves."); 17 U.S.C. § 102(a)-(b) ("Copyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression . . . [but i]n no case does copyright protection for an original work of authorship extend to any idea . . . ."). Therefore, to the extent that any similarities exist between the sets of circular graphics, they are unprotectible.

The third and fourth alleged similarities are the pictures of the microscope and the accessories. However, the exact placement of the microscope and the number of accessories shown differs

between the two packages, weakening their alleged similarity. Moreover, "[t]he sine qua non of copyright is originality." Feist Publ'n, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 345 (1991). As a result, courts have dismissed copyright infringement claims based on placement of functional elements, see, e.g., Peter Gaito Architecture, 602 F.3d at 68, or elements that follow naturally from the work's theme rather than from the author's creativity, see, e.g., Lapine v. Seinfeld, 375 F. App'x 81, 83 (2d Cir. 2010). Similarly, there is nothing original or protectible about including a picture of a product on its packaging. As a result, it is not a protectible element capable of supporting an infringement claim.

NSI also argues that Horizon's packages have the same "overall concept and feel" as their Smithsonian Microscope package. However, NSI's package has a simple white background with predominately gray, blue, and black components which give it a plain and educational feel. Horizon's package has a teal and black patterned background with an orange circle in the center, giving it a more playful and explorative feel. Accordingly, the packages differ in their total "concept and feel." See Lapine, 375 F. App'x at 83 (finding a different concept and feel in part because two works had different color palettes); Streetwise Maps, Inc. v. VanDam, Inc., 159 F.3d 739, 748 (2d Cir. 1998) (finding two maps not substantially similar because of different color selections).

In sum, because no reasonable jury could find the protectible elements to be substantially similar—including the specific elements that NSI specified as well as the total look and feel of the products—NSI has failed to state a claim of copyright infringement. See Peter Gaito Architecture, 602 F.3d at 67 (dismissing a claim when specific items and the overall visual impressions of the two designs are entirely different). Accordingly, the motion to dismiss the copyright claim is **granted**.

**B**

Horizon argues that the false designation of origin and false advertising claims should be dismissed because NSI has not identified any intellectual properly right to support the claim.

**i**

Section 43(a) of the Lanham Act provides a civil cause of action to a party injured by another's "false designation of origin" of its products, regardless of whether or not the allegedly copied material has a federally registered trademark. 15 U.S.C. § 1125(a). The Lanham Act's protection of unregistered trademarks extends to trade dress. See Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205, 2009 (2000). Trade dress "encompasses the design and appearance of the product together with all the elements making up the overall image that serves to identify the product presented to the customer." Fun-Damental Too, Ltd. v. Gemmy Indus. Corp., 111 F.3d 993, 999 (2d Cir. 1997). It is "essentially a product's total image and overall appearance, as

defined by its overall composition and design, including size, shape, color, texture, and graphics." Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc., 58 F.3d 27, 31 (2d Cir. 1995).

There are two types of trade dress protection: (1) packaging and (2) product design. Product packaging refers to the "manner in which a product was dressed up to go to market with a label, package, display card, and similar packaging elements." Id. Product design is "more expansive . . . and includes the design and appearance of the product as well as that of the container and all elements making up the total visual image by which the product is presented to customers." Id. While NSI's complaint references the product name, and in some instances, the components included in the Kits, almost every allegation in the Amended Complaint refers to packaging. Accordingly, the alleged trade dress at issue here is packaging rather than product design.

NSI further claims that the packaging for the Kits reflect a "product-line aesthetic" attributable to NSI and the Smithsonian brand. AC ¶ 23. Accordingly, NSI appears to be asserting a product-line trade dress claim. "A plaintiff . . . may seek trade dress protection for an entire product line, by establishing that the overall look in each separate product is consistent." See Yurman Design, 262 F.3d at 116. When evaluating an alleged product-line trade dress, the "concern for protecting competition is . . . particularly acute." Id.

"In any action under § 43(a), the plaintiff must prove (1) that the mark is distinctive as to the source of the good, and (2) that there is a likelihood of confusion between its good and the defendant's." Id. at 115. To prove distinctiveness of a packaging trade dress, a plaintiff may show either "inherent distinctiveness" or "secondary meaning." Id. Inherent distinctiveness exists when the "intrinsic nature of the mark serves to identify a particular source," whereas secondary meaning exists when "in the minds of the public, the primary significance of the mark is to identify the source of the product rather than the product itself." Id.

As a threshold matter, to prove distinctiveness "[i]n the Second Circuit, a plaintiff must articulate the specific elements that comprise its alleged trade dress." Bobcar Media, LLC v. Aardvark Event Logistics, Inc., No. 16-cv-885, 2020 WL 1673687, at *5 (S.D.N.Y. Apr. 6, 2020), aff'd, 839 F. App'x 545 (Fed. Cir. 2021); see also Landscape Forms, Inc. v. Columbia Cascade Co., 113 F.3d 373, 381 (2d Cir. 1997) ("[F]ocus on the overall look of a product does not permit a plaintiff to dispense with an articulation of the specific elements which comprise its distinct dress. . . . [A] plaintiff's inability to explain to a court exactly which aspects of its product design(s) merit protection may indicate that its claim is pitched at an improper level of generality."); Shandong Shinho Food Indus., Co. v. May Flower Int'l, Inc., No. 19-cv-1621, 2021 WL 736710, at *18 (E.D.N.Y. Feb.

25, 2021) (applying the articulation requirement to a packaging trade dress claim on a motion to dismiss).

NSI has failed to satisfy the threshold requirement to articulate the elements of the trade dress. NSI makes vague, conclusory assertions that "the . . . public has come to associate the Kits, and their distinctive . . . packaging . . . with NSI . . . ." AC ¶ 11. The most detailed description of trade dress NSI provides is the "general graphic setup, . . . colorways, photography [of] the components from the same view, depiction of the same kit components . . . and similar placement of the name and logo . . . ." AC ¶ 21. While NSI identifies the general elements which constitute its alleged trade dress, NSI does not adequately describe the specific elements of its trade dress. Moreover, NSI does not assert how these elements are distinctive, nor does the Amended Complaint even mention trade dress. Accordingly, NSI has not adequately articulated the elements of its alleged trade dress. See Landscape Forms, 113 F.3d at 381.

NSI argues in its opposition to the motion to dismiss that the pictures included in the complaint show seven distinctive elements common to their product line packaging. However, images alone do not satisfy the plaintiff's obligation to articulate the distinctive features of the trade dress. See Nat'l Lighting Co. v. Bridge Metal Indus., 601 F. Supp. 2d 556, 563 (S.D.N.Y. 2009) (holding that the court could not "be expected to distill from a

set of images those elements that are common to a line of products and both distinctive and non-functional.").

Having failed to identify with particularity the elements of its trade dress, NSI has failed to allege that its trade dress is distinctive. Accordingly, the false designation of origin claim fails.

**ii**

The Lanham Act provides a cause of action against anyone who uses a "false or misleading description [or representation] of fact . . . which is likely to cause confusion" or to "misrepresent[] the nature, characteristics, qualities, or geographic origin of [their product]." 15 U.S.C. § 1125(a).

To establish a false advertising claim under Section 43(a), a plaintiff must (1) demonstrate that the challenged statement is either literally false or, though literally true, likely to confuse or deceive consumers; (2) show that the defendant misrepresented an inherent quality or characteristic of a product; (3) show that the defendant placed the false or misleading statement in interstate commerce; and (4) prove that the plaintiff was injured as a result of the defendant's misrepresentation, either by a diversion of business or a loss of goodwill associated with the plaintiff's goods or services. See Merck Eprova AG v. Gnosis S.p.A., 760 F.3d 247, 255 (2d Cir. 2014); see also Davis v. Avvo, Inc., 345 F. Supp. 3d 534, 539-40 (S.D.N.Y. 2018).

Other than conclusory assertions that Horizon's packaging is false, NSI does not allege any facts that support a claim that the packaging is literally false. Therefore, for this claim to succeed, NSI must show sufficient facts to support a claim that Horizon's packages are "likely to mislead [or] confuse consumers." McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co., 936 F.2d 1544, 1549 (2d Cir. 1991).

In its Amended Complaint, NSI alleges that Horizon's copying causes consumer confusion as to the nature of Horizon's products, and the misleading impression that Horizon's products are affiliated with NSI. AC ¶¶ 38-44. NSI's theory of consumer confusion is based on the existence of NSI's alleged distinctive trade dress which is recognizable to the public. It is widely accepted that "without distinctiveness[,] the trade dress would not cause confusion as to the origin, sponsorship, or approval of the goods." Wal-Mart Stores, 529 U.S. at 210. Because NSI has failed to allege that its packaging is distinctive or to explain how it is distinctive, NSI cannot adequately support a claim of consumer confusion caused by Horizon's allegedly similar trade dress. As a result, NSI's claim of false advertising fails.

Accordingly, the motion to dismiss the claims pursuant to Section 43(a) is **granted.**

**C**

Horizon argues that NSI's unfair competition claim fails for the same reasons that its Lanham Act claims fail.

17

"The elements of an unfair competition claim under New York law are identical to the elements of an unfair competition claim under the Lanham Act, save that the plaintiff must also show bad faith by the infringing party." Fischer v. Forrest, 286 F. Supp. 3d 590, 617 (S.D.N.Y. 2018), aff'd, 968 F.3d 216 (2d Cir. 2020); see also Girl Scouts of U.S. of Am. v. Bantam Doubleday Dell Pub. Grp., 808 F. Supp. 1112, 1131 (S.D.N.Y. 1992), aff'd, 996 F.3d 1477 (2d Cir. 1993). Because NSI has failed to plead adequately the existence of trade dress, a requisite element of the Lanham Act claim, the common law unfair competition claim also fails.

Accordingly, the motion to dismiss the common law unfair competition claim is **granted**.

**D**

Horizon argues that the unjust enrichment claim should be dismissed because there is an insufficient relationship between the parties.

To state a claim for unjust enrichment in New York, "the plaintiff must allege that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." Georgia Malone & Co. v. Reider, 973 N.E.2d 743, 746 (N.Y. 2012); see also Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000). "The essential inquiry in any action for unjust enrichment or restitution is whether it is against equity and good conscience to permit the defendant to retain what is sought to be

recovered." <u>Paramount Film Distrib. Corp. v. New York</u>, 285 N.E.2d 695, 698 (N.Y. 1972); <u>see also</u> <u>Republic of Benin v. Mezei</u>, No. 06-cv-870, 2011 WL 4373921, at *7 (S.D.N.Y. Sept. 20, 2011), <u>aff'd</u>, 505 F. App'x 27 (2d Cir. 2012).

In New York, "a plaintiff cannot succeed on an unjust enrichment claim unless it has a sufficiently close relationship with the other party." <u>Georgia Malone</u>, 973 N.E.2d at 746. While privity is not required, the relationship between the parties must be not "too attenuated" such that it "could have caused reliance or inducement." <u>Mandarin Trading Ltd. v. Wildenstein</u>, 944 N.E.2d 1104, 1111 (N.Y. 2011).

The parties here are competitors, which alone is an insufficient relationship. <u>See</u> <u>GeigTech East Bay LLC v. Lutron Elecs. Co.</u>, 352 F. Supp. 3d 265, 286 (S.D.N.Y. 2018) ("The Complaint alleges only that the parties are competitors. This connection is far too attenuated to state a claim in quasi contract.").

NSI argues that mere awareness of how Horizon's conduct would affect NSI is enough to create a sufficiently close relationship. NSI claims that with discovery, it will be able to investigate Horizon's actions and will likely show that the bad acts were done with knowledge of the impact they would have on NSI. Even if such speculation were permissible to state a claim, and it is not, <u>see</u> <u>Twombly</u>, 550 U.S. at 570; <u>Iqbal</u>, 556 U.S. at 678, this awareness argument has been rejected by the New York Court of Appeals. <u>See</u>

<u>Georgia Malone</u>, 973 N.E.2d at 747 ("mere knowledge . . . is insufficient to support a claim for unjust enrichment . . . .").

NSI finally argues that the prior lawsuit and settlement is a sufficient connection between the parties, because NSI would not have agreed to settle the previous lawsuit if not for the implicit promise that Horizon would not copy NSI's packaging. NSI's Amended Complaint, however, merely states that the previous lawsuit was settled and voluntarily dismissed. The complaint alleges no facts to "indicate a relationship between the parties that could have caused reliance or inducement." <u>Mandarin Trading Ltd.</u>, 944 N.E.2d at 1111.

Moreover, NSI does not allege that it directly conferred a benefit to Horizon, but merely that the profit Horizon earned from selling its own product is unjust. This is insufficient for an unjust enrichment claim. <u>See</u> <u>GeigTech</u>, 352 F. Supp. 3d at 286 (dismissing a claim in which a plaintiff "does not allege that it conferred a <u>direct</u> benefit onto [the d]efendant – only that [the d]efendant profited from the sales of its own product."); <u>Int'l Diamond Imps., Inc. v. Med Art, Inc.</u>, No. 15-cv-4045, 2017 WL 2839640, at *10 (S.D.N.Y. June 29, 2017) ("[A] plaintiff must prove that they performed services for the defendant.").

As a result, NSI's complaint neither alleges direct enrichment of Horizon by NSI nor indicates a relationship that caused reliance or inducement. Therefore, NSI has not stated a

claim of unjust enrichment. Accordingly, the motion to dismiss the unjust enrichment claim is **granted**.

**CONCLUSION**

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the foregoing reasons, the motion to dismiss is **granted** without prejudice. The plaintiff may file an amended complaint within 30 days of the date of this Memorandum Opinion and Order. The motion to strike certain parts of the complaint is **denied** as moot.[4]

The Clerk of the Court is directed to close docket number 25.

**SO ORDERED.**

**Dated:     New York, New York**
             **July 16, 2021**

_____/s/ John G. Koeltl_____
John G. Koeltl
United States District Judge

---

[4] Horizon had moved to strike allegations in the AC relating to the prior lawsuit between the parties and to products as to which no intellectual property interest had allegedly been identified.

21
