UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————————

NSI INTERNATIONAL, INC.,
                    Plaintiff,

            - against -

HORIZON GROUP USA, INC.,
                    Defendant.

————————————————————————————

20-cv-8389 (JGK)

MEMORANDUM OPINION
AND ORDER

JOHN G. KOELTL, District Judge:

The plaintiff, NSI International, Inc., brought this action against Horizon Group USA, Inc., for infringing NSI's trade dress in violation of the Lanham Act, 15 U.S.C. § 1125(a), and for related violations of New York state law. Horizon now moves to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the following reasons, the motion to dismiss is **granted** in part and **denied** in part.

I.

The following facts are taken from the Second Amended Complaint ("SAC"), and are accepted as true for the purposes of this motion.

NSI manufactures educational consumer products, including activity kits covering a number of topics. These kits are developed in conjunction with the Smithsonian Institution, and are sold on NSI's website and by other retailers. Horizon also

sells educational kits, including kits covering the same topics

as some of the NSI kits.

In 2016, NSI sued Horizon, alleging copyright infringement

and related claims. The suit was resolved by a settlement

agreement. NSI does not contend that Horizon breached the

settlement agreement.

Since at least 2017, NSI has allegedly marketed the kits

using a uniform aesthetic comprised of the following elements:

    (a)   a rectangular 10.5 inch by 11.75 inch box;
    (b)   a solid white background;
    (c)   a brand name placed at the top;
    (d)   the product name placed in the lower quadrant;
    (e)   3-4 colorful shape icons containing or next to product
descriptors;
    (f)   an image of the product or its components centered on
the box and taking approximately 60-70% of the box space; and
    (g)   an absence of people playing with the product.

The SAC states that these features make the kits' packaging

inherently distinctive and that they are not functional.

NSI has allegedly invested substantial resources in

developing and promoting the packaging of the kits, including

over $5 million and thousands of man-hours. The kits are also

featured in third-party gift guides, YouTube videos, and

television segments, and have received several awards. The

packaging of the kits is highlighted in NSI's marketing and in

the third-party coverage. The SAC alleges that because of NSI's

marketing and because the kits have been featured by third

parties, consumers have come to associate NSI as the source of

2

goods bearing these features, such that this combination of features has acquired secondary meaning in the market.

The SAC alleges that the packaging of the Horizon kits uses the same seven elements as those employed on the packaging of the NSI kits. Below are examples of analogous kits sold by NSI (left) and Horizon (right):



The SAC alleges that Horizon's use of these elements has created confusion among consumers. The SAC alleges that "[t]here is no functional need" for Horizon to use these elements, noting that Horizon's packaging previously did not use the elements of NSI's alleged trade dress, and identifying other analogous products that use alternative designs. The SAC alleges that Horizon intentionally changed its packaging to resemble more closely NSI's packaging.

In 2020, NSI brought this action, alleging copyright infringement and related claims. NSI later filed a First Amended

Complaint ("FAC"). In response to Horizon's motion, the Court
dismissed the First Amended Complaint with leave to amend. The
Court noted that the FAC did not mention trade dress
infringement, let alone articulate a trade dress with the
requisite specificity. NSI then filed the SAC, bringing claims
for trade dress infringement under the Lanham Act, and unfair
competition and unjust enrichment under New York state law.
Horizon now moves to dismiss the SAC.

## II.

The Court has subject matter jurisdiction over the claims
brought under the Lanham Act pursuant to 28 U.S.C. § 1331. The
Court has supplemental subject matter jurisdiction over the
state law claims pursuant to 28 U.S.C. § 1367(a) because those
claims arise from the same "common nucleus of operative fact" as
the claims that arise under federal law, and therefore "form
part of the same case or controversy." See City of Chicago v.
Int'l Coll. of Surgeons, 522 U.S. 156, 165 (1997).[1]

## III.

### A.

In deciding a motion to dismiss pursuant to Rule 12(b)(6),
the allegations in the complaint are accepted as true and all
reasonable inferences must be drawn in the plaintiff's favor.

---

[1] Unless otherwise noted, this Opinion omits all internal
alterations, citations, footnotes, and quotation marks in quoted
text.

McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In support of its motion to dismiss, Horizon submitted a number of exhibits. However, on a motion to dismiss pursuant to Rule 12(b)(6), the Court should consider only the allegations in the complaint, documents referred to in the complaint or that are integral to the complaint or matters of which judicial notice can be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002). Horizon has not explained how the Court may take judicial notice of the exhibits and the Court therefore does not consider them.

**B.**

NSI brings a claim for trade dress infringement in violation of the Lanham Act. 15 U.S.C. § 1125(a)(1)(A) provides for liability against:

> [a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, . . . which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

Under this provision, a plaintiff may seek redress for infringement of "trade dress," which is "a product's total image and overall appearance, as defined by its overall composition and design, including size, shape, color, texture, and graphics." Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc., 58 F.3d 27, 31 (2d Cir. 1995). To prevail on such a claim, a plaintiff must first "identify the specific elements of its trade dress." Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 118 (2d Cir. 2001). A plaintiff must then show "that (1) the trade dress is distinctive as to the source of the good, (2) there is a likelihood of confusion between its good and defendant's, and (3) the trade dress is not functional." Luv N' Care, Ltd. v. Walgreen Co., 695 F. Supp. 2d 125, 130 (S.D.N.Y. 2010).

**1.**

In this case, NSI has identified the elements of its trade
dress with the requisite specificity. The SAC describes seven
elements as constituting its trade dress. Such a granular list
is sufficient to delineate NSI's trademark. See, e.g., Shandong
Shinho Food Indus. Co. v. May Flower Int'l, 521 F. Supp. 3d 222,
256 (E.D.N.Y. 2021); Sambonet Paderno Industrie, S.P.A. v. Sur
La Table, Inc., No. 14-cv-9473, 2015 WL 4498795, at *4 (C.D.
Cal. July 23, 2015).

**2.**

NSI has adequately alleged distinctiveness. A plaintiff may
allege distinctiveness by alleging that the trade dress has
attained "secondary meaning." Shandong, 521 F. Supp. 3d at 255.
"Trade dress is considered to have attained a secondary meaning
when a consumer immediately associates the dress of the product
with its source." Urb. Grp. Exercise Consultants, Ltd. v. Dick's
Sporting Goods, Inc., 12-cv-3599, 2013 WL 866867, at *3
(S.D.N.Y. Mar. 8, 2013). In considering whether a plaintiff has
adequately pleaded secondary meaning, courts in this Circuit
consider the following factors: "(1) advertising expenditures,
(2) consumer studies linking the mark to a source, (3)
unsolicited media coverage of the product, (4) sales success,
(5) attempts to plagiarize the mark, and, (6) length and
exclusivity of the mark's use." Shandong, 521 F. Supp. 3d at

258. Courts have found a trade dress claim adequately pleaded where three of these factors were properly alleged. See, e.g., id. at 258-59.

In this case, NSI has adequately pleaded secondary meaning. NSI alleges that it has spent over $5 million in development and advertising expenditures, and that such advertising often highlights the packaging of the kits. NSI alleges unsolicited media coverage in the form of awards, television shows, and YouTube videos, some of which focus on the boxes of the kits. NSI alleges that YouTube videos featuring the kits have received millions of views. The sales success of the packaging can be inferred from its extensive media coverage. And NSI alleges that it has used the same packaging since at least 2017, which is a long enough period of time to allege secondary meaning. See, e.g., Eliya, Inc. v. Kohl's Dep't Stores, No. 06-cv-195, 2006 WL 2645196, at *1, 4 (S.D.N.Y. Sept. 13, 2006) (finding that two years was enough time to allege secondary meaning). NSI has therefore alleged the first, third, fourth and sixth factors in the secondary meaning inquiry, which is sufficient to survive a motion to dismiss. See Shandong, 521 F. Supp. 3d at 258.

### 3.

Horizon argues for the first time in reply that there is no likelihood of confusion between NSI's and Horizon's products. Because Horizon raises this argument for the first time in

reply, the Court will not consider it. See, e.g., Aviva Trucking Special Lines v. Ashe, 400 F. Supp. 3d 76, 80 (S.D.N.Y. 2019).

**4.**

Finally, NSI has adequately alleged non-functionality. "[A] product feature is functional . . . if it is essential to the use or purpose of the article, or if it affects the cost or quality of the article." Shandong, 521 F. Supp. 3d at 260. Functionality is typically a question of fact. Sambonet Paderno Industrie, S.P.A. v. Sur La Table, Inc., No. 14-cv-9473, 2015 WL 4498795, at *3 (C.D. Cal. July 23, 2015); New Colt Holding Corp. v. RJG Holdings of Fla., Inc., 312 F. Supp. 2d 195, 212 (D. Conn. 2004). The burden to prove that an unregistered trade dress is not functional is on the plaintiff. Yurman Design, 262 F.3d at 116.

Horizon has pointed to no comparable case finding functionality as a matter of law in a packaging trade dress case at the motion to dismiss stage. The cases cited by Horizon either involved allegations of product design trade dress, where courts are more critical of allegations of non-functionality than in packaging trade dress cases, see, e.g., Carson Optical, Inc. v. Prym Consumer USA, Inc., 11 F. Supp. 3d 317, 341 (E.D.N.Y. 2014); or were decided at other stages of the case, see, e.g., Laurel Road Bank v. CommonBond, Inc., 18-cv-7797, 2019 WL 1034188, at *5-7 (S.D.N.Y. Mar. 5, 2019) (finding

functionality for the purpose of a preliminary injunction);
Chelo Publ'g Inc. v. Focus Publ'g Ltd., 94-cv-123, 1994 WL
391668, at *2-4 (S.D.N.Y. July 28, 1994) (same). The court in
Shandong dismissed the claims on the grounds of functionality,
but based its decision on the plaintiff's failure to allege
specifically how the alleged elements were non-functional. See
Shandong, 521 F. Supp. 3d at 260-61. By contrast, NSI
specifically alleges several times in the complaint that "there
was no functional need" for Horizon to adopt certain of the
attributes constituting the alleged trade dress, buttressing
these allegations by pointing to the design of Horizon's
previous packaging, which did not contain these elements.

Moreover, a combination of functional elements may
nonetheless yield a protectible trade dress. See, e.g., Eliya,
2006 WL 2645196, at *4.

Accordingly, NSI has alleged non-functionality, together
with the other elements required to plead a claim of trade dress
infringement. For these reasons, the motion to dismiss the claim
for trade dress infringement in violation of the Lanham Act is
denied.

C.

NSI also brings a claim for unfair competition under New
York law. A claim for unfair competition under New York common
law mirrors a Lanham Act trade dress claim, except that a

plaintiff must also plead bad faith. Katiroll Co., Inc. v. Kati

Junction, Inc., 33 F. Supp. 3d 359, 370 (S.D.N.Y. 2014). Bad

faith may be inferred from the extent of similarities between

the parties' products. Id. at 371. In this case, NSI has alleged

that Horizon copied the seven elements of NSI's trade dress, and

that Horizon intentionally changed its prior packaging to mirror

NSI's packaging more closely. These allegations are sufficient

to plead bad faith. In any event, Horizon does not appear to

dispute that NSI has alleged bad faith. Because NSI has alleged

bad faith in addition to the required elements of a Lanham Act

claim, NSI has stated a claim for common law unfair competition,

and the motion to dismiss that claim is **denied**.

### D.

NSI also brings a claim for unjust enrichment. A claim for

unjust enrichment arises where:

> the defendant has obtained a benefit which in equity and
> good conscience should be paid to the plaintiff. . . .
> [B]ut unjust enrichment is not a catchall cause of action
> to be used when others fail. It is available only in
> unusual situations when, though the defendant has not
> breached a contract nor committed a recognized tort,
> circumstances create an equitable obligation running
> from the defendant to the plaintiff. . . . An unjust
> enrichment claim is not available where it simply
> duplicates, or replaces, a conventional contract or tort
> claim.

Corsello v. Verizon New York, Inc., 967 N.E.2d 1177, 1185 (N.Y.

2012). However, "a plaintiff cannot succeed on an unjust

enrichment claim unless it has a sufficiently close relationship

with the other party." Georgia Malone & Co. v. Reider, 973 N.E.2d 743, 746 (N.Y. 2012); see also Mandarin Trading Ltd. v. Wildenstein, 944 N.E.2d 1104, 1111 (N.Y. 2011).

The plaintiff argues that the existence of a settlement agreement between the parties creates a sufficiently close relationship to sustain an unjust enrichment claim. But the plaintiff concedes that the settlement agreement does not cover the conduct at issue. Accordingly, for the purpose of the conduct at issue in this case, the parties are merely competitors. That alone is an insufficient relationship to sustain a claim of unjust enrichment. See GeigTech East Bay LLC v. Lutron Elecs. Co., 352 F. Supp. 3d 265, 286 (S.D.N.Y. 2018). Accordingly, the motion to dismiss the unjust enrichment claim is **granted.**

### Conclusion

The Court has considered all of the arguments of the parties. To the extent not specifically addressed above, those arguments are either moot or without merit. For the foregoing reasons, the motion to dismiss the unjust enrichment claim is **granted.** The motion to dismiss the Lanham Act trade dress

infringement and common law unfair competition claims is **denied.**

The Clerk is directed to close ECF No. 41.

**SO ORDERED.**
Dated:     New York, New York
           June 10, 2022

                                    John G. Koeltl
                              **United States District Judge**