

HUNTON ANDREWS KURTH LLP
200 PARK AVENUE
NEW YORK, NY 10166-0005

TEL   212 • 309 • 1000
FAX   212 • 309 • 1100

ARMIN GHIAM
DIRECT DIAL: 212 • 908 • 6207
EMAIL: aghiam@HuntonAK.com

October 13, 2022

FILE NO: 119686.0000182

**Via ECF**

The Honorable James L. Cott
U.S. District Court, Southern District of New York
500 Pearl St., Room 1360
New York, NY 10007

      Re:    *NSI International, Inc. v. Horizon Group USA, Inc.*,
             <u>Docket No. 1:20-cv-08389 (S.D.N.Y. Oct. 7, 2020)</u>

Dear Judge Cott:

      We represent Horizon Group USA, Inc. ("Horizon") in the above matter. On October 6, 2022, Plaintiff NSI International, Inc. ("Plaintiff") filed a Letter Motion concerning certain discovery disputes between the parties. (*See* ECF 66). Pursuant to your Honor's Individual Rule II(B)(1), this letter is filed in response to Plaintiff's Letter Motion. The parties agreed to extend Horizon's deadline to respond to the Letter Motion to October 13, 2022. (*See* ECF 67).

      We thank you in advance for your time and consideration.

Sincerely,

/s/ Armin Ghiam

cc:    All Counsel Record

Enclosures



## I. Introduction

The parties have agreed to extend the discovery cutoff to January 31, 2023. Horizon is in the process of supplementing its production and believes that various issues raised by Plaintiff are already, or will be moot, once Horizon's production is supplemented. More importantly, Plaintiff's Letter Motion (or "Letter") comes as Horizon has been pushing Plaintiff to meet its very basic discovery obligations. Indeed, the Letter is an obvious attempt to "beat" Horizon to the Court concerning Plaintiff's failure to participate in the most basic of discovery obligations. Not only has Plaintiff refused to provide any meaningful or useful documents, Plaintiff has not even responded to a *single* interrogatory other than stating that it would provide documents pursuant to Rule 33(d). As such, Plaintiff's attempt to hijack the discovery process must be curtailed.

## II. The Tenuous Nature of Plaintiff's Claims Against Its Competitor

On October 7, 2020, Plaintiff filed its first complaint against Horizon for copyright infringement, unfair competition and unjust enrichment. The complaint accused 14 products and broadly claimed that Horizon misappropriated Plaintiff's "copyrighted elements." Following a pre-motion to dismiss conference call with the Honorable Judge Koeltl, Plaintiff elected to file an amended complaint—interestingly, there was not even a single reference to a claim of trade dress infringement in the amended complaint. Horizon moved to dismiss the amended complaint, which was granted by the Court in its entirety. On August 15, 2021, Plaintiff filed its second amended complaint. In response to Horizon's third motion to dismiss, Plaintiff's claim for unjust enrichment was dismissed again by the Court on June 10, 2022. What remains of Plaintiff's second amended complaint is essentially a claim for trade dress infringement against 6 accused products.

Horizon's third motion to dismiss explains in detail why Plaintiff is not entitled to trade dress protection, *e.g.*, Plaintiff's alleged trade dress is descriptive and functional (it consists of common elements such as a white box, a trademark on the upper lefthand, the absence of children playing, and using an industry standard store shelf size package). (*See generally* ECF 43 and 50). Moreover, Horizon is a licensee of Discovery and its packaging is designed in accordance with strict style guidelines provided by Discovery. Indeed, there are several other Discovery-branded, non-Horizon packages in the market which include the same elements as what Plaintiff accuses Horizon of using and allegedly infringing Plaintiff's trade dress. Most notably though, ***everyone*** of Horizon's products at issue in this case boldly and prominently displays—on ***five*** sides of the product—the DISCOVERY trademark and logo. Plaintiff's products display the SMITHSONIAN trademark and logo on ***all six*** sides. There is ***no*** evidence of even a single example of actual confusion in this case, and accordingly, Plaintiff's allegations of likelihood of confusion is merely a conjecture motivated by Plaintiff's fear of losing a government contract with Smithsonian for which both parties are currently bidding.

October 13, 2022
Page 3






### III. <u>Plaintiff's On-And-Off and One-Sided Discovery Demands and Tactics</u>

Almost six months after Horizon submitted its document requests, on June 2, 2022, Plaintiff made a production. The production consisted of 28,000 pages of documents—of which there were 4,400 Excel files. Conveniently, ***all*** the documents were designated as Attorneys' Eyes Only. Horizon allocated significant resources to timely review the production and quickly realized that the production was nothing but a "document dump." Indeed, the production was devoid of any useful information, and consisted only of deal sheets, invoices, and operation and inventory reports—all which could have been produced in a more useful manner for litigation purposes (*e.g.*, a single profit and loss statement, instead of several thousands of invoices).

In fact, Plaintiff did not produce any agreements, draft documents, advertising, documents showing the creation and development of its trade dress, and most importantly, documents showing any third party recognition of its alleged "trade dress"—all of which are essential in a trade dress infringement lawsuit. Five days after the production, on June 7, Horizon notified Counsel that Plaintiff's production is ***utterly*** deficient as to at least 43 requests because ***no*** documents were produced in response to any of these requests. *See* **Exhibit A**. To date, Plaintiff has not even identified a single document in response to Horizon's December, 2021 interrogatories even though it invoked Rule 33(d) in responding to these interrogatories. *See* **Exhibit B**.

It was clear that Plaintiff was intentionally avoiding its good faith obligation to timely produce responsive documents. Plaintiff kept on asking for additional time to respond to

October 13, 2022
Page 4



Horizon's deficiency letter. And instead of meaningfully responding, Counsel repeatedly—almost on a daily basis—threatened Horizon that unless Horizon set a date certain for completion of its document production, Counsel would seek relief from the Court. Yet when asked to address the deficiencies in Plaintiff's production and whether the production was complete as to even a ***single*** request, Counsel simply deflected by stating that Plaintiff requested the call and it would not answer any questions in that regard unless Horizon sets the date for completion of its own production.

Horizon made a production of almost 7,000 pages on June 24, 2022. Horizon never received a response to its letter and did not hear back from Counsel for three months. On September 13, Counsel reappeared from the woodwork by sending a deficiency letter. The parties subsequently had a meet and confer, during which Counsel confirmed Horizon's position that Plaintiff's production was (and remains) utterly deficient. Indeed, Plaintiff indicated that its production is complete as to ***one and only one*** of the categories identified by Horizon, but it intends to supplement its production in response to ***30*** requests identified in Horizon's letter—Plaintiff alleges to have no documents in response to the remaining 12 requests. Despite repeated requests, Plaintiff never supplemented its interrogatory responses. Since the parties' meet and confer, Horizon has made ***three*** supplemental productions–Plaintiff is yet to make another production of documents or supplement its discovery responses.

In any event, on October 11, 2022, the parties agreed to extend the discovery cutoff to January 31, 2023. Plaintiff has informed Horizon that it will file the request on Friday.

**IV.   Plaintiff's Responses to Horizon's Requests**

In response to Horizon's December 10, 2022 Requests, Plaintiff has failed to provide a single response beyond invoking the Rule 33(d). It has been over 10 months now—Plaintiff must supplement its responses immediately. Plaintiff has represented that it will supplement its document production as to 30 requests. Horizon will wait, in good faith, for the production of these documents before seeking assistance from the Court, if there are any deficiencies.

**V.   Horizon's Responses to Plaintiff's Allegations[1]**

As a threshold matter, Plaintiff's Letter is improper and premature because Plaintiff never indicated that the parties are at an impasse during the two meet and confers in September. Plaintiff's Letter does not state otherwise.

    **a.   Plaintiff's requests concerning the design and creation of the packages, and Horizon's relationship with Discovery are overbroad (Nos. 1, 3 and 4)**

Horizon is a licensee of Discovery, and as such, is required to follow the instructions in the Discovery style guide to create the accused packages. The style guide shows the design elements that Discovery requires Horizon to include in its packaging. Horizon has already

---

[1] On January 11, 2022, Plaintiff served its first set of discovery requests. Horizon timely provided its written responses and objections on February 24, 2022. Plaintiff never raised any issue concerning any of Horizon's objections. As such, Plaintiff's Letter concerning Horizon's objections are untimely.

October 13, 2022
Page 5



produced the Discovery style guide, which in turns pertains to "Discovery's involvement with the creation, design and/or development of" the accused packages, as well as "Documents Concerning the creation, design and/or development of the packaging" of the accused packages. Horizon has also agreed to produce its license agreement with Discovery.

Plaintiff, however, demanded "*All* Documents Concerning": "Discovery's relationship with Horizon"; "Discovery's involvement with the creation, design and/or development of the packaging"; and "the creation, design and/or development of the packaging." Despite Horizon's offer to conduct targeted searches, Counsel refused to meaningfully limit the scope of these requests. Horizon is willing to conduct targeted searches for relevant and responsive documents, but will not produce "all" communications with and documents concerning these topics.[2]

### b. Horizon's production will be limited to the *accused* products (No. 2)

The original complaint accused 14 Discovery-branded products of trade dress infringement. The Court has already granted Horizon's motion to dismiss that complaint. Plaintiff filed the second amended complaint which—for the first time—provides a definition for Plaintiff's trade dress, and accuses only *six* of Horizon's Discovery-branded products. Horizon has already agreed to produce relevant documents relating to these six products. Horizon has not limited its production if a responsive document references other products. However, documents that solely pertain to Horizon's non-accused products are not related Plaintiff's claims in this case. Plaintiff does not explain how or why other packages in Horizon's product line demonstrate functionality or lack thereof. As such, Horizon maintains its objection.

### c. Plaintiff refuses to narrow its request for identification of Horizon's employees (No. 5)

In response to Plaintiff's interrogatories, Horizon has identified its Chief Marketing Officer, Hiu Lee. Ms. Lee is the person most knowledgeable concerning all the issues pertaining to Plaintiff's discovery requests as Horizon only serves as a licensee—it does not own the brand. Horizon also offered to provide additional names, if Plaintiff agrees to properly narrow its request. In particular, Counsel for Horizon asked if Plaintiff is interested in knowing the Chief Designer for the accused packages. Counsel for Plaintiff refused this concession. Plaintiff misstates the conversation between the parties concerning the depositions. Plaintiff can certainly inquire about Horizon's design team and its members when taking the deposition of Ms. Lee—certainly no more than one deposition is required to obtain this information.

### d. Horizon's "knowledge" of the infringement is a moot issue (No. 6)

Request 33 seeks "All Documents Concerning the distribution of the Horizon Kits." Counsel for Horizon explained that this request, as drafted, encompasses a significant number of documents, *e.g.*, delivery contracts with truck drivers, service contracts for the relevant facilities, etc. It appears that Plaintiff seeks documents that demonstrate Horizon's knowledge

---

[2] In response to each of its requests, Horizon has provided clear written objections and incorporates each of those objections by reference into this Letter.

October 13, 2022
Page 6



of its infringing activity. Counsel for Horizon has already confirmed that no such documents exist. Nevertheless, as a concession, Counsel for Horizon offered to search for the term "NSI." Beyond this concession, Plaintiff's request is speculative and only a fishing expedition.

### e. Horizon has agreed to produce relevant financial information (No. 7)

During the meet and confer, Counsel for Horizon explained that Horizon will produce a summary of its financial information, based on which Plaintiff will be able to infer Horizon's profits and deductible expenses. Plaintiff's objection at this time is premature.

### f. Horizon will produce exemplary third party STEM kits (No. 8)

Request No. 51 pertains to Horizon's "knowledge" of third-party kits. Counsel for Horizon explained that Horizon's "knowledge" of these third-party kits is irrelevant to the question of functionality and is so broad and all-encompassing that it is frankly impossible to meaningfully respond to. Nevertheless, Horizon has already produced representative examples of these third-party products. As such, Plaintiff objection is moot, if not irrelevant.

### g. Plaintiff has refused to clarify the meaning of "due diligence" (No. 9)

Request No. 64 seeks "Any Documents Concerning any Due Diligence performed by or on behalf of Horizon regarding the Disputed Packaging prior to the adoption of the Disputed Packaging." Counsel for Horizon offered to limit the scope of this request to legal due diligence, but Plaintiff refused this offer. What falls outside of the scope of the legal due diligence is not relevant to the parties' claims or defenses.

### h. Plaintiff's request for IP infringement claims is overbroad (No. 10)

Plaintiff has demanded that Horizon produce "*All* Documents Concerning *any* claims of intellectual property infringement made against Horizon, including *any* settlement(s) reached." Counsel for Horizon already informed Plaintiff that this lawsuit is the *only* intellectual property infringement claim concerning the accused packages or the alleged trade dress. The relevance of other claims of intellectual property unrelated to the packages-at-issue is not clear and certainly not proportional to the needs of this case. As such, Horizon maintain its objection.

### i. Plaintiff has refused to clarify the meaning of "authority" (No. 11)

Horizon is a licensee of Discovery and Horizon has followed Discovery's style guide in creating its packages. As such, the precise definition of "authority" is paramount to Horizon's response to this request. The requests do *not* provide a definition for "authority," and counsel for Plaintiff has *refused* to clarify the term. As such, Horizon is unable to respond to the request, as drafted. Nevertheless, Horizon has provided the style guide it received from Discovery, and Plaintiff can thus determine the level of involvement from Discovery in creating the packages. Accordingly, Plaintiff's objection is moot.